**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION**

| | |
|---|---|
| Laura Ann Simmons,               )<br>                                              )<br>        Plaintiff,                          )<br>                                              )<br>    v.                                       )<br>                                              )<br>Michael J. Astrue,                    )<br>Commissioner of Social Security Administration,   )<br>                                              )<br>        Defendant.                     )<br>_____) | C/A No. 9:11-02729-CMC-BM<br><br><br>**ORDER** |

Through this action, Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Plaintiff appealed pursuant to 42 U.S.C. § 405(g). The matter is currently before the court for review of the Report and Recommendation ("Report") of Magistrate Judge Bristow Marchant, made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rules 73.02(B)(2)(a) and 83.VII.02, *et seq.*, D.S.C. The Report, filed on October 17, 2012, recommends that the decision of the Commissioner be affirmed. Dkt. No. 16. On November 2, 2012, Plaintiff filed objections to the Report. Dkt. No. 18. On November 19, 2012, the Commissioner filed a response to Plaintiff's objections. Dkt. No. 19. For the reasons stated below, the court adopts the Report and affirms the decision of the Commissioner.

**STANDARD**

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination

1

of those portions of the Report to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one.  Section 205(g) of the Act provides, "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance."  *Thomas v. Celebrezze,* 331 F.2d 541, 543 (4th Cir. 1964).  This standard precludes a *de novo* review of the factual circumstances that substitutes the court's findings for those of the Commissioner.  *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).  The court must uphold the Commissioner's decision as long as it is supported by substantial evidence and reached through application of the correct legal standard.  *Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005).  "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted.  The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action."  *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969).  "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

## BACKGROUND

Plaintiff applied for SSI and DIB, alleging disability as of February 15, 2004, due to diabetes, high blood pressure, and carpal tunnel syndrome.  The ALJ conducted a hearing on September 21, 2005, and denied Plaintiff's claims in a decision issued February 21, 2006.  The

Appeals Council denied Plaintiff's request for review and Plaintiff filed an action in U.S. District Court. On July 30, 2007, the court remanded the case for further administrative action.

A second administrative hearing was held on March 31, 2009. Again, Plaintiff's claims were denied in a decision issued November 11, 2009, which the Appeals Council upheld. Plaintiff filed another action in U.S. District Court. The court remanded that case for further administrative action, specifically to consider the combined effect of Plaintiff's impairments and how they would affect her residual functional capacity ("RFC"), and to further explain why Drs. McDonald and Gonsalves's opinions were rejected or discounted. *Simmons v. Astrue*, No. 4:10-00023-HFF-TER, 2011 WL 5403655 (D.S.C. Jan. 20, 2011) (Report), *adopted by* order in Dkt. No. 24.

A third administrative hearing was held on July 11, 2011. Plaintiff's claims were once again denied in a decision issued August 4, 2011. The Appeals Council denied Plaintiff's request for further review, thereby making the ALJ's decision the final decision of the Commissioner. Plaintiff filed this action on October 10, 2011, alleging that the ALJ's decision is not supported by substantial evidence.

## DISCUSSION

The Magistrate Judge recommends that the court affirm the Commissioner's decision because it is supported by substantial evidence. Plaintiff objects to the Report, arguing that the Magistrate Judged erred (1) in describing the facts because pertinent medical evidence is omitted; (2) in concluding that the RFC reflects that the ALJ conducted a proper combined effect analysis at step three; (3) in concluding that the ALJ properly assessed Plaintiff's RFC; (4) in recommending that the ALJ properly rejected Drs. McDonald and Gonsalves's disability opinions; and (5) in failing to address Plaintiff's argument that the ALJ did not comply with the District Court's remand order

3

in 2011. Dkt. No. 18.

**Medical Evidence.** Plaintiff argues that the Magistrate Judge, as well as the ALJ, ignored pertinent medical evidence when stating the facts of the case. The court has reviewed all of the identified facts purportedly omitted. The facts that were not described by the Magistrate Judge and ALJ are discussed below.

There is evidence that Plaintiff did not have medical insurance and could not afford certain procedures or tests, or a new mask for her BiPap machine, to assist with her sleep apnea.[1] The ALJ's opinion cited Plaintiff's failure to seek treatment for daytime sleepiness (Tr. 4, 10) as one reason to discount her testimony and one of her treating physician's opinions (Dr. Gonsalves) that her sleep apnea limited her ability to work. The court reviews the medical evidence to determine whether the ALJ's decision that sleep apnea did not limit Plaintiff's ability to work is supported by substantial evidence.

---

[1] There is a notation on almost all of Dr. McDonald's treatment notes – "No insurance limits her workups." – that appears after the label of "Social History." There are only three specific instances in the medical evidence indicating that Plaintiff's lack of insurance affected her medical treatment. On February 10, 2004, Dr. McDonald noted that Plaintiff had "hypocalcemia – corrected calcium is 7.9. She has no insurance and will treat w/o ordering the usual labs to help keep her cost down." Tr. 148. The second instance was on March 10, 2004, when Dr. McDonald noted that Plaintiff had an elevated sed rate and modestly elevated ACE level. Tr. 145. He noted that "[w]ith lack of funds and insurance, we'll try to hold off on further evaluation, such as a bronchoscopy, with transbronchial biopsy or CT of her chest." *Id.* The third instance was in the treatment notes of Dr. Goldblatt on July 15, 2009. Tr. 526. Dr. Goldblatt noted that "[p]resently Ms. Simmons is uninsured and while I think she might benefit from a repeat sleep study and consultation with our sleep physicians[,] that is presently not an option. I have recommended she get a new mask as it has been > 6 months[.] [S]he again is limited by her financial component. I have therefore recommended she speak to our respiratory therapists about ways to make her mask more functional." *Id.*
  Plaintiff does not allege disability resulting from hypocalcemia. Neither does Plaintiff allege that her inability to receive a bronchoscopy hindered her medical care or resulted in a late diagnosis of a disease or disorder. The only instance that possibly affects the ALJ's decision relates to her sleep apnea.

- On July 9, 2004, Plaintiff complained of shortness of breath and daytime sleepiness to Dr. McDonald. Dr. McDonald suspected sleep apnea and referred her for further evaluation. Tr. 117.

- On August 30, 2004, Dr. McDonald noted that Plaintiff had been diagnosed with sleep apnea, had been using a mask and "appears to be tolerating it well." Tr. 108.

- On August 31, 2005, Dr. Heidecker noted that Plaintiff has very severe OSA (obstructive sleep apnea), but that she was on BiPap and "has had improvement in daytime somnolence and is rested in AM when she awakens." Tr. 186.

- On March 28, 2006, Dr. Gonsalves noted that Plaintiff has severe OSA, but that her OSA symptoms had improved with treatment. Tr. 328.

- On July 15, 2009, Plaintiff visited Dr. Goldblatt complaining of uncontrolled sleep apnea. As explained in footnote 1, Dr. Goldblatt indicated that he would recommend a repeat sleep study and a new mask, but that she was unable to afford these without insurance. He, therefore, recommended that she speak with one of his respiratory therapists to make her mask functional.

- On February 21, 2011, state physician Dr. Weissglass evaluated Plaintiff. At that time, Plaintiff stated that she had sleep apnea and had been using a mask. She said that she did not think the mask was working because she was tired all of the time. She also said that she was not sure that the mask still fit. Tr. 509. Based on Plaintiff's report of sleep apnea, Dr. Weissglass recommended that "she should avoid occupations where by regulation this must be controlled (such as driving under DOT)." Tr. 512.

The weight of the medical evidence indicates that Plaintiff's sleep apnea was controlled with treatment. After her initial diagnosis of sleep apnea, the record shows that Plaintiff complained of daytime sleepiness once in 2009 and once in 2011. It appears, however, that these complaints were due to a malfunction of the mask. Although one physician recommended that she get a new mask in 2009, and noted that it was not possible based on her lack of insurance and funds, that physician instructed her to seek assistance with improving the mask she had. There is no evidence that she returned with complaints that her mask was not working after that date. Similarly, although she

5

complained to Dr. Weissglass about a possible mask problem and daytime sleepiness, there is no other medical evidence that she sought treatment or assistance with her sleep apnea in 2011. Finally, and perhaps most importantly, the ALJ included in her RFC a limitation for daytime sleepiness as recommended by Dr. Weissglass. Therefore, to the extent that the ALJ erred by omitting the fact the she lacked insurance, that error was harmless.

Plaintiff cites to treatment notes where physicians have identified possible diseases (or conditions) that were consistent with some of Plaintiff's symptoms. However, Plaintiff was never diagnosed with these diseases, nor does she claim disability based on any of these diseases. Any omission of this evidence is, therefore, harmless error.

There is also evidence that Plaintiff experienced eye problems in 2004. The ALJ discussed those problems (orbital inflammation) and considered orbital inflammation to be a severe impairment. The ALJ sufficiently discussed Plaintiff's eye problems and Plaintiff has only cited evidence that appears to be cumulative.[2] *See Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (" . . . the ALJ need not evaluate in writing every piece of testimony and evidence submitted. . . . What we require is that the ALJ sufficiently articulate his assessment of the evidence to 'assure us that the ALJ considered the important evidence ... [and to enable] us to trace the path of the ALJ's reasoning.'").

The rest of the purported omitted evidence also appears to be cumulative: Plaintiff's blood sugar difficulties associated with Plaintiff's diabetes, leg and feet pain and swelling, and suggestions

---

[2] To the extent Plaintiff has cited evidence that indicates a different eye condition, Plaintiff has failed to make that argument or otherwise explain how that evidence would lead to a different result, *i.e.*, how the omitted evidence indicates that Plaintiff's ability to work is more limited than in the RFC.

6

that Plaintiff may have heart or lung problems. The ALJ found that Plaintiff had the severe impairments of, *inter alia*, diabetes and diabetic neuropathy and obesity. The ALJ also found that Plaintiff's diabetes was well-controlled, and none of the evidence cited by Plaintiff suggests a different result.[3] The ALJ explained the evidence of Plaintiff's foot and leg edema, described as mild by Dr. McDonald, and found that it did not limit Plaintiff more than her RFC.[4] The ALJ also limited Plaintiff to sedentary work based on her complaints to Dr. Weissglass that she had knee pain. As explained by the ALJ, the medical evidence fails to include any diagnosis of chronic cardiac or respiratory diseases. Plaintiff argues that the omitted evidence is "crucially and directly evidence to the concept of substantial evidence and the issue of the combined effect analysis." Dkt. No. 18 at 4. After reviewing the cited omitted evidence and the ALJ's opinion, the court concludes that most of the evidence was cumulative of the evidence cited by the ALJ. To the extent that the omission of the fact that Plaintiff lacked insurance was error, that error was harmless as explained above. As explained by the Report, "the decision reflects that the ALJ adequately discussed and evaluated Plaintiff's diagnoses and claimed limitations, and Plaintiff's argument that the ALJ should have gone into even more detail discussing these medical issues in his decision is without merit." Report at 15. The court, therefore, rejects Plaintiff's objection.

**Combined Effect Analysis.** Plaintiff argues that the ALJ failed to properly discuss and evaluate the combined effect of all of Plaintiff's impairments as required by *Walker v. Bowen*. 889 F.2d 47, 49 (4th Cir. 1989) ("in evaluating the effects of various impairments upon a disability

---

[3] Plaintiff cites to high blood sugar between March and June 2004, which Dr. McDonald attributed to Plaintiff's temporary use of prednisone to treat eye inflammation. Tr. 122-138.

[4] Plaintiff was prescribed compression stocks for leg edema in August 2004. Tr. 109. In December 2006, Dr. Vincent noted that she had bilateral leg swelling, which he suspected was caused by a particular medication, which he changed. Tr. 336. In February 2011, Plaintiff reported to Dr. Weissglass that she had knee pain. Tr. 511.

claimant, the Secretary must consider the combined effect of a claimant's impairments and not fragmentize them."). The Report considered Plaintiff's argument concerning combined effect analysis but concluded that "[a] plain reading to [*sic*] the decision reflects the thorough review and consideration given by the ALJ to the evidence and the effects of all the Plaintiff's impairments in deciding her RFC." Dkt. No. 16 at 16.

In her objections, Plaintiff argues that the Magistrate Judge allowed the ALJ's evaluation of the RFC to substitute for a proper analysis of the combined effect of Plaintiff's impairments at step three of the sequential evaluation process. Step three is when the ALJ must determine whether the claimant's impairments meet or medically equal the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If they meet the criteria of the listed impairments, the claimant is disabled and the sequential evaluation process ends. Plaintiff cites C.F.R. § 404.1526 §§ (b)(1)-(3), which explains three ways in which an adjudicator can find that a claimant's impairments medically equal a listed impairment, *i.e.*, medical equivalence. C.F.R. § 404.1526 § (b)(3) states:

> If you have a combination of impairments, no one of which meets a listing (see § 404.1525(c)(3)), we will compare your findings with those for closely analogous listed impairments. If the findings related to your impairments are at least of equal medical significance to those of a listed impairment, we will find that your combination of impairments is medically equivalent to that listing.

Plaintiff argues that, in addition to the impairments the ALJ found to be severe, her cardiac condition, sleep apnea, dyspnea (shortness of breath), osteopenia, and pancytopenia combine to render her "functionally disabled." Dkt. No. 13 at 14. The ALJ specifically found that Plaintiff had no diagnosed cardiac or respiratory condition and that her sleep apnea was non-severe as it is controlled with treatment. The medical evidence does not support that Plaintiff suffers from any work limitations from shortness of breath, osteopenia, and pancytopenia. Plaintiff has failed to show

that her impairments, considered individually or in combination, meet a listing.

After considering each of Plaintiff's severe impairments individually and concluding that none met a listing, the ALJ stated that he considered whether "the claimant's obesity has increased the severity of the claimant's coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing." Tr. 400. Further, the ALJ adequately explained all of Plaintiff's alleged impairments and the effects of those impairments supported by medical evidence.[5] Finally, Plaintiff has not established that her combination of impairments meets a listing.[6] The court is satisfied that the ALJ properly considered whether the combination of Plaintiff's impairments met a listing, and that substantial evidence supports the ALJ's finding that Plaintiff's combination of impairments does not meet a listing. The court, therefore, rejects Plaintiff's

---

[5] In explaining the RFC determination, the ALJ stated:
Moreover, the undersigned has considered the combined effects of the claimant's alleged impairments, both severe and non-severe, on the claimant's ability to work. 20 C.F.R. 404.1526(b)(3) and 416.926(b)(3). While the combination of the claimant's impairments imposes some limitations, there is no indication in the record that the claimant's ability to sustain consistent function has been complicated by the combination of impairments. Although the claimant's obesity may contribute to her neuropathy and extremity swelling, the record document[]s the claimant's repeated non-compliance with orders to lose weight. At the hearing, the claimant acknowledged that her obesity may contribute to her neuropathy, yet there is no evidence that the claimant has made significant strides to decrease her BMI. The undersigned has considered the combination of these impairments, along with the claimant's carpal tunnel syndrome and orbital inflammation, in limiting the claimant to sedentary work with the additional postural and environmental limitations set forth above. However, there is no objective evidence that the combination of claimant's impairments imposes greater limitations than those inherent in the residual functional capacity stated above.
Tr. 403.

[6] In her opening brief to the Magistrate Judge, Plaintiff argued that she meets, "at a minimum, Listing 9.00(B)(5)(a)(ii) and Listing 3.10 – Sleep Related Breathing Disorders." Dkt. No. 13 at 15. Listing 9.00 (B)(5)(a)(ii) is for chronic hyperglycemia. Listing 3.10 is for sleep related breathing disorders. Plaintiff has failed to establish how the medical evidence meets the specific criteria of one or both of these listings. *Kellough v. Heckler*, 785 F.2d 1147, 1152 (4th Cir. 1986) (It is plaintiff's burden to present evidence that her condition meets or equals a listed impairment.).

9

objection.[7]

**RFC.** Plaintiff objects to the Report's finding that the ALJ's determination of her RFC was thorough and supported by substantial evidence. Plaintiff contends that the ALJ did not consider all of her impairments, and that the RFC analysis ignored Plaintiff's lack of health insurance and treatment notes by several physicians indicating possible diseases or disorders for which some of Plaintiff's symptoms could be consistent. First, the court agrees with the Report and finds that the RFC is supported by substantial evidence. Second, the court rejects Plaintiff's argument that the ALJ should rely on suggestions of possible diagnoses, without further evidence of an actual diagnosis. Third, as explained earlier, to the extent the ALJ erred in failing to acknowledge that Plaintiff lacked health insurance, that error was harmless. Except for two instances where she experienced mask problems for treatment of sleep apnea, and could not afford to buy a new one, Plaintiff never identified a single instance where her lack of health insurance impeded her medical care. The court is not insensitive to the myriad of problems associated with lack of access to proper medical care. However, in this case, there is nothing in the record to suggest, and Plaintiff has not convincingly explained, that her lack of insurance impeded her medical care in a way that supports a finding of disability. The court cannot speculate as to whether Plaintiff has undiagnosed diseases or disorders that may be impacting her health. The court's role is to evaluate whether the ALJ's

---

[7] In her objections, Plaintiff focuses on whether the ALJ adequately explained the combined effect of her impairments at step three, prior to the RFC determination. However, when considering whether the ALJ properly considered the combined effect of impairments, the decision must be read as a whole. *See Brown v. Astrue*, No. 10-1584, 2012 WL 3716792, *6 (D.S.C. Aug. 28, 2012) ("Accordingly, the adequacy requirement of *Walker* is met if it is clear from the decision as a whole that the Commissioner considered the combined effect of a claimant's impairments."). In any event, the court is satisfied that the ALJ properly considered the combined effect of Plaintiff's impairments at step three to determine whether Plaintiff had a medical equivalence to a listing and at step four when determining Plaintiff's functional limitations for purposes of her RFC.

decision is supported by substantial evidence. And, the court concludes that the ALJ's RFC is supported by substantial evidence.

**Treating Physician Opinions.** Plaintiff objects to the Magistrate Judge's finding that substantial evidence supports the ALJ's decision to reject "the three treating opinions on record," which state that Plaintiff is disabled. Dr. McDonald provided two opinions (August and November 2004) and Dr. Gonsalves provided one opinion (March 28, 2006). After reviewing the ALJ's opinion, the record, and the Report, the court agrees that the ALJ's decision to reject these two physicians' opinions concerning Plaintiff's ability to work is supported by substantial evidence, for the reasons stated in the Report.

**Remand Order.** Finally, Plaintiff objects because the Magistrate Judge "did not address the ALJ's failure to adhere to the 2011 District Court remand order as it was issued." Dkt. No. 18 at 10. The court has read the 2011 remand order and the ALJ decision that was reversed. The ALJ's prior decision was reversed and remanded in 2011 for the ALJ to consider the combined effect of Plaintiff's impairments and to further explain why Drs. McDonald and Gonsalves's opinions were rejected. On remand, the ALJ conducted a combined effect analysis and provided adequate explanation for rejection of those opinions. The court, therefore, rejects Plaintiff's objection.

## CONCLUSION

For the reasons set forth above, the court adopts the Report and Recommendation of the Magistrate Judge and affirms the decision of the Commissioner.

**IT IS SO ORDERED.**

S/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
February 11, 2013